UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MELODY KINGSLEY,

        Plaintiff,

vs.                                            Case No. 3:04-cv-883-J-20MCR

JO ANNE B. BARNHART Commissioner of
Social Security,

        Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**

**THIS CAUSE** is before the Court on Plaintiff Melody J. Kingsley's Complaint (Doc. No. 1), seeking judicial review of an administrative decision denying her application for Social Security benefits.[1]  The Court has thoroughly reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Plaintiff protectively applied for a period of disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on May 11, 2000, alleging she became unable to work on July 17, 1998.  (Tr. 15, 46-48).  The Social Security Administration denied Plaintiff's claims initially and upon reconsideration.  (Tr. 12-14, 15-16, 29-34, 36-38).  Plaintiff filed a timely request for a hearing on the matter.

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Doc. No. 12.

Plaintiff's request was granted and a hearing was conducted by an administrative law judge ("ALJ) on January 29, 2003.  (Tr. 532-582).

The ALJ issued a decision on April 29, 2003, concluding that Plaintiff was not disabled within the meaning of the Social Security Act and therefore not entitled to a period of disability, DIB or SSI.  (Tr. 15-25).  Plaintiff filed a timely request for review by the Appeals Council which was denied on July 16, 2004.  (Tr. 5-7).  Consequently, the ALJ's April 29, 2003 decision became the final decision of the Commissioner.  See 20 C.F.R. §§ 404.955, 404.981.  After exhausting all administrative remedies, Plaintiff filed her timely Complaint (Doc. No. 1) in the United States District Court on September 13, 2004.  Accordingly, the matter is now ripe for judicial review.

## II.	NATURE OF CLAIMED DISABILITY

### A.	Basis of Claimed Disability

Plaintiff claims to be disabled since July 17, 1998, due to ulcers, migraine headaches, left shoulder impingement syndrome, lower back pain, hypertension and depression.  See Doc. No 1 at pp. 5-6.

### B.	Summary of Evidence Before the ALJ

Plaintiff was born September 20, 1954, and was 48 years of age at the time the ALJ conducted the administrative hearing.  (Tr. 16, 538).  Plaintiff possesses a high school education and has completed one year of college.  (Tr. 16, 538).  Her past work includes employment as a waitress, cashier, checker, restaurant manager and manager of a self-service gas station.  (Tr. 16, 539-541).

In his decision, the ALJ provided a detailed account of Plaintiff's medical records. In sum, Plaintiff has a significant history of lower back pain resulting from an automobile accident on July 17, 1998.  Conservative measures including anti-inflammatories, physical therapy and steroid injections were unsuccessful in treating Plaintiff's injuries. She therefore underwent surgical intervention consisting of anterior lumbar interbody fusion with discetomy at L4-L5.  (Tr. 142-160).  The procedure was performed by Plaintiff's treating surgeon, Sunday Ero, M.D.  (Tr. 215-231).

The record reveals that, among other ailments, Plaintiff sought treatment for chronic lower back pain from Ulises M. Caraballo, M.D., her treating family physician. (Tr. 266-310).   On March 14, 1999, Dr. Caraballo began prescribing antidepressants in response to Plaintiff's complaints of depression.  (Tr. 290).  Approximately one month later, in a patient re-evaluation note dated April 12, 1999, Dr. Jacob Green, a treating neurologist, opined that Plaintiff's anxiety and depression had progressed to the extent that she displayed an inability to function and cope.  (Tr. 376).  Dr. Green suggested that Plaintiff's anxiety and depression were possibly associated with her medication and advised that she see a psychiatric doctor.  Id.  Dr. Green further advised that Plaintiff see Dr. Caraballo immediately.  Noting her earlier visit with Dr. Green, Dr. Caraballo examined Plaintiff on April 12, 1999.  (Tr. 288).  Based upon the examination, Dr. Caraballo included depression among Plaintiff's diagnoses and modified her dosage of Prozac.  Id.

On November 9, 2000, Plaintiff underwent a mental health evaluation performed by John J. Schulte, Psy.D., a consulting psychologist.  (Tr. 196-197).  Based upon his

examination, Dr. Schulte concluded Plaintiff suffered an adjustment disorder with depressed mood.  Dr. Schulte opined Plaintiff's adjustment disorder stemmed from her chronic pain and loss of function resulting from her back injury.  (Tr. 196).

Subsequently, on November 26, 2000, Val J. Bee, Psy.D., a consulting psychologist, completed a Psychiatric Review Technique.  (Tr. 198-211).  Dr. Bee noted Plaintiff experienced no restriction of daily activities and no episodes of decompensation as a result of her affective disorder.  (Tr. 208).  Dr. Bee further noted Plaintiff experienced mild limitations in maintaining social functioning and in maintaining concentration, persistence or pace.  Id.

On May 23, 2001, Plaintiff underwent a personality assessment performed by Lauren Lucas, Ph.D, a consulting pyschologist.  (Tr. 232-234).  Based upon her examination, Dr. Lucas opined Plaintiff experienced dysthymic disorder.  (Tr. 233). Dr. Lucas further opined that Plaintiff appeared psychologically competent to perform routine, repetitive tasks and to appreciate relationships among co-workers and supervisors.  (Tr. 233).  A second Psychiatric Review Technique was completed on May 31, 2001 by Steven L. Wise, Psy.D., a consulting psychologist.  (Tr.235-248). Dr. Wise noted Plaintiff experienced mild limitations in maintaining concentration, persistence or pace.  (Tr. 245). He further noted Plaintiff experienced no restriction in daily activities; no difficulties in maintaining social functioning; and no episodes of decompensation.  (Tr. 245).

Dr. Ero's progress notes reveal Plaintiff continued to complain of lower back pain. (Tr. 215-231).  An MRI scan of her lumbar spine showed mild evidence of disc bulge

with no thecal sac compression or foraminal stenosis. (Tr. 215). It further showed mild L5-S1 degenerative change but no other levels of significant degeneration. (Tr. 215). Dr. Ero recommended Plaintiff attend a pain management clinic for evaluation and treatment with epidural steriod injections. Id.

Progress notes by Claudio E. Vincent, M.D. of the Plaza Surgery Center Pain Clinic indicate that Plaintiff underwent radio-frequency nerve ablation. (Tr. 311). Plaintiff responded well to the treatment but did not obtain the desired results on her left lumbar facets. Id. Dr. Vincent suggested additional treatment of Plaintiff's left lumbar facets to provide long-term relief of her back pain pending approval from her insurance company. Id. Additional patient notes from the Metropolitan Pain Management Center, Inc. indicate that Plaintiff continued pain management and that she responded well to treatment. (Tr. 406-416).

At the hearing before the ALJ, Plaintiff offered the following relevant testimony. She experiences lower back pain accompanied by pain, numbness, weakness and tingling in her legs. (Tr. 542-544, 552). Plaintiff's pain increases when she walks, sits or stands for extended periods. She is able to sit and stand for approximately 15-30 minutes. When Plaintiff performs activities such as cooking or household cleaning, she requires periods of rest where she must lie down.

As treatment for her pain, Plaintiff takes OxyContin and Zanaflex. The medication provides relief but causes drowsiness and affects Plaintiff's ability to concentrate. (Tr. 544, 547-549). Plaintiff further stated that she believes the pain

medication is addictive and that she sought treatment for her addiction to pain medication at Ten Broeck Hospital.[2]

Plaintiff takes antidepressants for treatment of her symptoms of depression. (Tr. 548). As a result of the depression, she overeats and frequently awakes during her sleep at night. (Tr. 548, 555). Plaintiff experiences feelings of frustration because she is unable to do the things she did prior to the accident and because she is unable to play with her grandchildren for more than 30 minutes without feeling pain. (Tr. 548). Additionally, Plaintiff experiences feelings of uselessness because she is unable to work or to perform other tasks. Id. Plaintiff sought treatment for her depression with Dr. Sanchez however discontinued seeing him after two visits because Plaintiff was unsatisfied with his treatment. (Tr. 556).

## C. Disability Determination

### 1. Definition of Disability

The term "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

[2] Based upon the Court's independent review, there are no records from Ten Broeck. In her argument, Plaintiff states: "Records verifying such an assertion were not placed into this record despite the fact that an ALJ's duty to fully develop the record exists 'even if the claimant is represented by counsel.'" See Doc. No. 17 at p. 9. The ALJ has a duty to fully and fairly develop the record. Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988). Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Graham v. Apfel, 129 F.3d 1420 (11th Cir. 1997). Here, the ALJ was under no special duty to develop the record. Plaintiff's counsel stated that Plaintiff was admitted to Ten Broeck Hospital, a mental health facility, to evaluate her possible addiction to pain medication. (Tr. 535). Plaintiff's counsel further stated that the none of the medical records regarding Plaintiff's treatment at Ten Broeck Hospital "seemed to turn up." (Tr. 535). Even though the ALJ has a duty to develop a full and fair record, Plaintiff bears the burden of establishing that she is disabled and therefore must produce evidence supporting her claim. 20 C.F.R. § 416.912(a), (c).

continuous period of not less than twelve months.  42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511

### 2. The Five Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. § § 404.1520.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. § 404.1520(a)(4)(I).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(a)(4)(v).  Plaintiff bears the burden of persuasion through step 4, while at

step 5 the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

### 3.     Summary of the ALJ's Decision

In this case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 17, 1998, the alleged onset of disability.  (Tr. 24).  At step two, among other things, the ALJ found Plaintiff suffered "status post anterior L4-5 discectomy and BAK fusion accompanied by lower back pain."  (Tr. 24).  At step three, the ALJ found that Plaintiff's medically determinable impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Before moving to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC").  See 20 C.F.R. § 404.1520(a)(4)(iv).

In making the determination, the ALJ reviewed the medical evidence presented and found Plaintiff's testimony regarding her limitations not fully credible.  He noted that, although Plaintiff experienced some residual pain, Plaintiff's treating surgeon released her to light duty work on August 1, 2000.  He further noted that, since the surgery in April 2000, Plaintiff's lower back pain and discomfort have been managed conservatively.  Additionally, the ALJ noted that, based upon her mental status evaluations, Plaintiff displayed only mild functional limitations in the areas of maintaining social functioning and maintaining concentration, persistence or pace.  The ALJ found no clinical findings of a condition of such severity that could reasonably be expected to give rise to the level of severity of limitations and restrictions Plaintiff alleged.  Based upon his findings, the ALJ determined Plaintiff retained the RFC to perform light and sedentary work which afforded a sit/stand option.

At step four, the ALJ found Plaintiff's impairments precluded her from doing her past relevant work.  At step five, through the aid of a vocational expert ("VE"), the ALJ found Plaintiff's impairments did not prevent her from doing other work existing in the national economy.

## III.    DISCUSSION

### A.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995), citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable

to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.     Issues Presented**

In this case, Plaintiff presents two issues for the Court's review. First, Plaintiff argues the ALJ erred at step two of the sequential evaluation by failing to properly consider the severity of all of her impairments as well as the cumulative effect they have on her ability to perform work related activities. Specifically, Plaintiff contends that, although the ALJ properly found the condition of her lower back severe within the meaning of the Regulations, he failed to recognize the severity of her mental impairment at step 2 and throughout the remaining steps of the sequential evaluation. Second, Plaintiff argues the ALJ failed to properly consider her complaints of pain and other subjective symptoms. According to Plaintiff, the ALJ's credibility determination is flawed because his findings are not supported by substantial evidence in the record.

In response, the Commissioner argues the ALJ's findings are supported by substantial evidence. The Commissioner contends Plaintiff failed to meet her burden of proof in establishing that her mental impairment posed more than a minimal effect on her ability to perform basic work activities. The Commissioner further contends that, pursuant to all applicable Regulations and in accordance with Eleventh Circuit case law, the ALJ properly considered Plaintiff's subjective complaints of pain.

### C. Mental Impairments

Initially, Plaintiff argues the ALJ was required to adequately consider the combined effects of all of her impairments however, at step 2, he "ascribed no recognition of severity to [her] mental impairment." Basically, Plaintiff argues the ALJ erred by failing to find that she has a severe mental impairment. Based upon the ALJ's failure to find a severe mental impairment, Plaintiff further argues the ALJ did not consider her impairments in combination. In support, Plaintiff relies on the April 12, 1999 patient note by Dr. Green.

At step 2 of the sequential evaluation, the ALJ must determine whether a claimant's impairments are severe. An impairment is not severe if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled. Id., 985 F.2d at 534.

With respect to mental disorders, the ALJ must consider the documentation of a medically determinable impairment as well as the degree of limitation such an impairment may impose on the individuals's ability to work. The listings for mental disorders are arranged in eight diagnostic categories. 20 C.F.R. Part. 404, Subpart P, Appendix 1. The criteria in paragraphs B and C of the listings for mental disorders describe those functional limitations associated with mental disorders which are incompatible with the ability to work–i.e., limitations in functional areas deemed essential to work. A mental impairment is medically equivalent to a listed mental impairment if the medical findings are at least equal in severity and duration to the listed findings. 20 C.F.R. § 404.1526. An individual meeting or equaling the criteria could not reasonably be expected to engage in gainful work activity. 20 C.F.R. Part 404, Subpart P, Appendix 1.

Individuals who have an impairment with a level of severity that does not meet the criteria of the listings for mental disorders may or may not have the residual functional capacity to engage in substantial work activity. The determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity when the criteria of the listings for mental disorders are not met or equaled, but the impairment is nevertheless severe. 20 C.F.R. Part 404, Subpart P, Appendix 1.

For mental disorders, severity is assessed in terms of the functional limitations imposed by the impairment. Functional limitations are assessed using the criteria in paragraph B of the listings for mental disorders (activities of daily living; social

functioning; concentration, persistence or pace; and ability to tolerate increased mental demands associated with competitive work).  A "marked" degree of limitation means more than moderate, but less than extreme.  A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively.  20 C.F.R. Part 404, Subpart P Appendix 1.  The Commissioner employs a technique to ensure that ALJs obtain, consider, and properly evaluate all evidence needed to evaluate mental impairment severity.  20 C.F.R. Pt. 404, Subpart P, Appendix 1.  The technique is used in connection with the sequential evaluation process.  See 20 C.F.R. §§ 404.1520a and 416.920a.

     The presence of a mental disorder should be documented primarily on the basis of reports from individual providers such as psychiatrists and psychologists and facilities such as hospitals and clinics.  20 C.F.R. Part 404, Subpart P, Appendix 1.  Information from medical and non-medical sources may be used to obtain detailed descriptions of the individual's activities of daily living; social functioning; concentration, persistence and pace; or ability to tolerate increased mental demands (stress).  This information can be provided by programs such as community health centers, day care centers and family members who have knowledge of the individual's functioning.  20 C.F.R. Part 404, Subpart P, Appendix 1.  In some cases, descriptions of daily living or social functioning given by individuals or treating sources may be insufficiently detailed and/or may conflict with the clinical picture otherwise observed or described in the

examinations or reports.  It is therefore vital to review all pertinent information relative to the individual's condition.  20 C.F.R. Part 404, Subpart P, Appendix 1.

Here, the April 12, 1999 patient note by Dr. Green represents his only assessment of Plaintiff's condition and is insufficient to establish the severity of Plaintiff's mental impairment.  As the Commissioner correctly emphasizes, there is no evidence that Dr. Green possesses the requisite expertise to evaluate Plaintiff's mental status.  This is further supported by Dr. Green's own recommendation that Plaintiff see a psychiatric doctor.

Additionally, even though the record indicates Dr. Carabella, Plaintiff's treating family physician, consistently prescribed antidepressants, this fact also fails to establish the severity of Plaintiff's mental impairment.  It appears Dr. Carabella began prescribing the medication simply in response to Plaintiff's complaints of depression.  Prior to prescribing the medication, there is no evidence Dr. Carabella confirmed the presence of a mental disorder through mental status evaluations or psychological testing. Furthermore, Dr. Carabella's progress notes fail to provide any assessment of Plaintiff's activities of daily living; social functioning; concentration, persistence and pace; or ability to tolerate increased mental demands (stress).

The existence, nature and severity of Plaintiff's mental impairment is established, in large part, through consultative examinations.  Those reports demonstrate that Plaintiff, at most, experienced only mild functional limitations as a result of her affective disorder and depressed mood.  By Plaintiff's own testimony, there is no indication that her mental disorder imposes any significant functional limitation that would preclude her

ability to perform work related activities. Plaintiff testified that she is able to shower and dress herself daily as well as prepare meals and perform certain household tasks. (Tr. 543, 547, 548, 551-552 ). When Plaintiff briefly returned to work as a restaurant manager she discontinued working because she was unable to perform the physical rather than mental demands of the position. (Tr. 540-541). Accordingly, the ALJ's assessment of Plaintiff's mental impairment is supported by substantial evidence. Additionally, based upon the ALJ's step two analysis, the Court rejects Plaintiff's argument that he failed to properly consider the combined effect of all of her alleged severe impairments.

**D.     Pain**

Next, Plaintiff argues the ALJ failed to properly evaluate her pain testimony. Plaintiff maintains the ALJ's credibility findings regarding her pain and subjective symptoms "are not closely linked to the substantial evidence of record." Doc. No. 17 at p. 11. The Court disagrees.

Pain is a non-exertional impairment. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical
> condition and either (2) objective medical evidence that confirms the

> severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560, quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, based upon its review, the Court finds the ALJ properly cited to and applied the Eleventh Circuit pain standard. The ALJ concluded Plaintiff suffered from "status post anterior L4-5 discectomy and BAK fusion, with chronic low back pain". (Tr. 17). This impairment meets the first prong of the Eleventh Circuit's pain standard as it is evidence of an underlying medical condition. In reviewing the medical evidence presented, the ALJ further found Plaintiff's allegations of pain far exceeded what was

reasonably expected from her impairment as well as what was documented by her treating and examining physicians.  Additionally, as provided through Plaintiff's hearing testimony, the ALJ considered other factors such as:  (1) her daily activities; (2) the location, duration, frequency, and intensity of her pain; (3) factors that precipitated or aggravated her symptoms; (4) the type, dosage, effectiveness, and side effects of Plaintiff's medication; (5) treatment, other than medication, she has received for relief of pain; and (6) her functional limitations and restrictions due to pain.  See SSR 96-7p; 20 C.F.R. 404.1529(c); 416.9299(c).

Plaintiff asserts that the ALJ improperly based his decision upon personal observations at the hearing.  The ALJ is not prohibited from considering the claimant's appearance and demeanor during the hearing.  Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985).  The ALJ did note Plaintiff's demeanor during the hearing however did not discredit her testimony solely on that basis.  In this case, the ALJ properly considered and evaluated all of the evidence presented and found Plaintiff's pain was not of such severity as to cause disability.  Moreover, in discrediting Plaintiff's pain testimony, the ALJ clearly articulated his reasons for doing so.  (Tr. 19-21).

## IV.   CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this 16th day of December, 2005.

*Monte C. Richardson*
           **MONTE C. RICHARDSON**
      UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
Any Unrepresented Party